IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BOBBIE TORRY,

                Plaintiff,                        OPINION AND ORDER

    v.

                                              14-cv-479-wmc

J. NICKEL'S, M. MORGAN and
KARI LLOYD,

                Defendants.

*Pro se* plaintiff Bobbie Torry alleges that the defendants, all employees of the Wisconsin Department of Corrections ("DOC"), violated his First Amendment rights by retaliating against him for filing a lawsuit against other prison officials, as well as violated his Eighth Amendment rights by forcing him to sleep in a bug or ant-infested cell. Because Torry is incarcerated at Columbia Correctional Institution ("CCI") and is seeking redress from a governmental employee, the Prison Litigation Reform Act ("PLRA") requires the court to screen his complaint and dismiss any portion that is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A. For the reasons that follow, Torry's request for leave to proceed is denied.[1]

---

[1] In his complaint, Torry also alleged a First Amendment retaliation claim against defendant Kari Lloyd, a financial specialist at CCI. By his own motion, Torry seeks to dismiss that claim, acknowledging that he failed to exhaust administratively. (Dkt. #11.) Because that motion is granted, the court has not considered his First Amendment claim against Lloyd in screening his complaint.

ALLEGATIONS OF FACT[2]

All of plaintiff Bobbie Torry's claims relate to events that occurred at CCI. Defendant D. Morgan is the administrative captain of the DS1 and DS2 segregation units at CCI, and defendant J. Nickels was CCI's security director for all times relevant to Torry's complaint. Torry purports to sue each defendant in his or her individual capacity.

In July 2010, Torry filed a lawsuit in this court, alleging that Sean Salter, a correctional officer at CCI, as well as other defendants, violated his due process rights. *See Torry v. Salter*, No. 10-cv-378-slc (W.D. Wis. July 9, 2010).[3] On January 4, 2011, a CCI financial specialist approved Torry for a legal loan and on February 9, 2011, this court granted Torry leave to proceed on his claim against Salter. *Id.* (dkt. #10). That same day, a letter was sent to Michael Meisner, then warden of CCI, informing him of Torry's obligation to pay the filing fee. *Id.* (dkt. #11).[4]

Torry alleges that defendant Nickels and Morgan were aware of his lawsuit against Salter, again probably because of the letter to Meisner. Torry alleges that on October 11, and November 16, 2011, and February 10, 2012, he was asked to double up, by giving

---

[2] In addressing any *pro se* litigant's complaint, the court reads the allegations of the complaint generously, resolving ambiguities and making reasonable inferences in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). In his complaint, Collins alleges, and the court assumes for purposes of this screening order, the following facts.

[3] Those claims were dismissed without prejudice for failure to exhaust his administrative remedies. *Torry*, No. 10-cv-378 (dkt. ##29, 30).

[4] On March 1, 2011, the financial specialist, Keri Lloyd, removed Torry's name from the legal loan list. Torry alleged the specialist acted because of the letter sent to Meisner. (Compl. (dkt. #1) ¶ 5.) On April 16, 2011, Torry reapplied for a legal loan, but his request was denied on April 26, 2011. As noted above, plaintiff has now dropped any claim that Lloyd acted with any purpose to retaliate.

up his bed and sleeping on the floor. Torry further alleges that Nickels and Morgan allowed correctional officers to write Torry up for his refusal to sleep on the floor on these three dates, and subsequently defendant Morgan sentenced him to segregation for each of these conduct reports, ranging from 90 to 150 days. Torry challenges these disciplinary actions because CCI has "no written policies at all for putting any inmate on the floor." (*Id.* at ¶ 16.)

Torry also alleges that while housed in DS1, on or about February 4, 2012, Torry was laying down in his bed, which is approximately 5 inches off of the floor, when he was bit multiple times by ants, resulting in a lump underneath his left eye, which he then reported to the health services unit.[5] Torry alleges that then-security director, defendant Nickels, and Morgan were both aware that CCI had an "extreme bug problem." (*Id.* at ¶¶ 18, 23.)

OPINION

Construing the allegations in the complaint in the light most favorable to plaintiff, it appears Torry seeks to bring a First Amendment retaliation claim and an Eighth Amendment conditions of confinement claim against both defendants. The court considers each claim in turn.

---

[5] Torry also alleges that on December 12, 2011, defendant Morgan stated "that Torry is allowed to be double celled, including on the floor." (Compl. (dkt. #1) ¶ 24.)

I.  **First Amendment Retaliation**

Torry alleges that each defendant learned of his lawsuit against another correctional officer at CCI and then took steps to retaliate against him in violation of his First Amendment rights by: ordering him to double up, including sleeping on the floor, and disciplining him when he refused; and making him sleep in bug infested conditions at least once. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).

To state a claim for retaliation, a plaintiff must identify (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by each defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendants took the action they did against him. *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009). As for the first element, it is well established that filing a lawsuit complaining of prison policies constitutes protected activity. *See Carter v. Radtke*, No. 10-cv-510-wmc, 2014 WL 5494679 (W.D. Wis. Oct. 30, 2014) (citing *Bridges*, 557 F.3d at 551-52). Moreover, being forced to sleep on the floor could deter a person of ordinary firmness from engaging in the protected activity of filing lawsuits. Plaintiff's claim, however, falters on the third element.

Plaintiff alleges that defendants "probably" learned about his lawsuit against Salter from then Warden Meisner, who received a letter informing him of the filing fee amount due. This allegation, standing alone, is too attenuated for the court to infer that the filing of the lawsuit was one of the reasons defendants took the actions they did.

Torry also fails to allege any facts to allow an inference that Meisner and Nickels were motivated by Torry's filing of the lawsuit against Salter in ordering him to double up and sleep on the floor. To the contrary, the facts alleged undercut such an inference. Torry was granted leave to proceed on his claim against Salter in February 2011, and Meisner was informed of this lawsuit at that same time. Torry, however, was not forced to sleep on the floor until nine months later, and then *after* his case against Salter was dismissed for failure to exhaust his administrative remedies.

Even drawing all reasonable inferences in favor of Torry, he has failed to allege sufficient facts from which a reasonable jury could infer that defendants Morgan and Nickels were motivated by Torry's lawsuit against Salter in ordering him to double up and sleep on the floor.[6] Accordingly, the court will deny Torry leave to proceed on a First Amendment retaliation claim.

## II. Conditions of Confinement

Torry also seeks to proceed on a claim against defendants Morgan and Nickels based on being required to double up and sleep on the floor, subjecting him to bug and/or ant bites. The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to provide prisoners "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To constitute cruel and

---

[6] Torry also seeks to bring a claim against Nickels and Morgan for a violation of his due process rights under the Fourteenth Amendment on the basis that these defendants disciplined him for his failure to obey an order not based on a written policy. As best as the court can discern, Torry's claim is premised on a theory that absent a written policy, he lacked notice of his obligation to obey an oral command. There is *no* legal support for such a claim.

unusual punishment, however, conditions of confinement must be extreme: a general "lack of due care" by prison officials does not rise to the level of an Eighth Amendment violation because "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

To demonstrate that prison conditions violated the Eighth Amendment, a plaintiff must allege facts that satisfy a test involving both an objective and subjective component. *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). The objective analysis focuses on whether prison conditions were sufficiently serious so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834, or "exceeded contemporary bounds of decency of a mature, civilized society," *Lunsford*, 17 F.3d at 1579. The subjective component requires an allegation that prison officials acted wantonly and with deliberate indifference to a risk of serious harm to plaintiff. *Id.*

Torry alleges that he experienced ant bites on one occasion after being required to sleep on "the floor," though it appears from Torry's allegations that the "floor" bed is actually several inches off the floor. Even accepting as true that Torry experienced, on one occasion, several bites, resulting in swelling by an eye, these allegations are insufficient to satisfy the objective prong of an Eighth Amendment claim. *Compare Sain v. Wood*, 512 F.3d 886, (7th Cir. 2008) (while unpleasant, allegation of cockroach infestation spanning six years, including being bitten twice, did not constitute a constitutional violation), *with White v. Monohan*, No. 08-2567, 326 Fed. Appx. 385, 388,

2009 WL 1034265, at *3 (7th Cir. Apr. 17, 2009) (reversing district court's dismissal of plaintiff's conditions of confinement claim where the plaintiff alleged that "for over five years the 'bugs, roaches, spiders, wasps, [and] bees' had bitten and stung him so often as to leave multiple scars, wounds, and sores, causing him internal injuries"). Accordingly, the court will deny Torry leave to proceed on an Eighth Amendment conditions of confinement claim as well.

ORDER

IT IS ORDERED that plaintiff Bobbie Torry's motion to dismiss his claims against defendant Kari Lloyd (dkt. #10) is GRANTED and that his request to proceed against the other defendants is DENIED. Accordingly, his complaint is DISMISSED for failure to state a claim upon which relief may be granted.

Entered this 26th day of September, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge